# 12-2889-cr(L),
## 12-2940(CON), 12-2972(CON), 12-2976(CON), 12-3078(CON), 12-4556(CON), 12-4685(CON)

# United States Court of Appeals
## for the
# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MOSHE BUCHNIK, MICHAEL YARON, CAMBRIDGE ENVIRONMENTAL & CONSTRUCTION CORP., DBA NATIONAL ENVIRONMENTAL ASSOCIATES, OXFORD CONSTRUCTION & DEVELOPMENT CORP., SANTO SAGLIMBENI, EMILIO FIGUEROA, AKA TONY,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## FINAL FORM REPLY BRIEF FOR DEFENDANT-APPELLANT MOSHE BUCHNIK

MARC AGNIFILO
  *Of Counsel*
BRAFMAN & ASSOCIATES, P.C.
*Attorneys for Defendant-Appellant*
  *Moshe Buchnik*
767 Third Avenue, 26th Floor
New York, New York 10017
(212) 750-7800

# **TABLE OF CONTENTS**

                                                                             **Page**

1. The Present Case is Factually Distinct From <u>Burden</u> .................. 1

2. Detailed, Factual Accusations Of An Unexamined Government Cooperator Are At the Heart of What the Confrontation Clause Is Meant To Prevent ..................................................................... 7

3. Conclusion ................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011).............................. 9

Davis v. Washington, 547 U.S. 813 (2006).................................... 2, 3, 9, 10

Crawford v. Washington, 541 U.S. 36 (2004)......................................... 9

Hammon v. Indiana, 547 U.S. 813 (2006)............................................. 3, 9, 10

Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009)......................... 8, 9

Michigan v. Bryant, 131 S. Ct. 1143 (2011) .......................................... 9

United States v. Burden, 600 F.3d 204 (2d Cir. 2009) ........ 1, 2, 4, 5, 6, 9, 10

United States v. Feliz, 467 F.3d 227 (2d Cir. 2006).............................. 9

United States v. Wright, 722 F.3d 1064 (7th Cir. 2013) ........................ 1n.1

Williams v. Illinois, 132 S. Ct. 2221 (2012).......................................... 7

**Statutes:**

United States Constitution, Sixth Amendment...................................... 6

Fed. R. Evid. 403 ................................................................................ 5

Appellant Buchnik's Reply Brief

Appellee asks this Court to go further than any court has ever gone in upholding Porath's factual, accusatorial, and unexamined statements. No court has held that the detailed, specific, and accusatorial statements of a government cooperating witness (Porath) on a recording he made with the FBI as trial evidence, in a completely controlled, non-emergent context (an undercover operation) about past events (i.e., the historical connection between NEA and ETAL or that Saglimbeni signed requistions) is admissible absent cross examination. A review of other cases in this area, principally United States v. Burden, 600 F.3d 204 (2d Cir. 2009), makes this point.

1. The Present Case is Factually Distinct From Burden

Aside from the fact that the two cases involve audio recordings of a cooperator, the content, nature and purpose of the challenged statements here are nothing like those in Burden.[1] The Government incorrectly suggests that Burden holds as a general matter that a cooperator's recorded statements are non-testimonial because the purpose is to elicit incriminating responses from the target. See Brief for the United States, p. 51. However, Burden does not purport to categorize any particular kind of statement as

---

[1] They are also distinct from the cooperator's statements in United States v. Wright, 722 F.3d 1064 (7th Cir. 2013), cited by the Government.

1

testimonial or non-testimonial. On the contrary, Burden observed that "no court can say whether a particular kind of statement is testimonial until it has considered that kind of statement in an actual case." Burden, 600 F.3d at 224. So, rather than being a generalized finding that recorded cooperator statements are non-testimonial, Burden requires a fact-intensive review of the content, nature and purpose of the statements at issue.

Burden is limited to its facts and is readily distinguishable from the present case. The cooperator in Burden, Darryl Saunders, wore a recording device to capture a drug deal - a criminal transaction comprised of words and actions of the buyer and seller. In the course of a potential drug deal, Saunders asks Burden, "'what are you charging for a 14?,' David Burden replies '550,' and Saunders whistles, communicating his impression that this is a high price." 600 F.3d at 224. In this exchange, Saunders did not make any factual statements about the guilt of Burden or anyone else. Rather, he did nothing more than invite a potential drug transaction, and the words that he spoke were *res gestae* of that event, which was unfolding in real time on the audio recording. The Burden decision is roughly analogous to the Supreme Court's decision in Davis v. Washington, 547 U.S. 813 (2006), where the declarant's "911" call were non-testimonial, in part, because she was relaying events that were emergent and still unfolding.

2

In this case, on the other hand, Porath made affirmative, accusatorial statements about facts that directly implicated the defendants in past conduct charged as part of the conspiracy and scheme to defraud. Porath's statements are more in the nature of the declarant in <u>Hammon v. Indiana</u>, 547 U.S. 813 (2006), the companion case of <u>Davis</u>, in that Porath is reflecting upon and discussing past events. Indeed, the recording shows that Porath had a litany of agenda items to bring up to Figueroa. One agenda item was for Porath to bring up the connection between NEA and ETAL, which topic Porath brought up on his own, seemingly out of the blue. Porath introduced the topic by asking the rhetorical question of whether Figueroa knew "the worst part." Figueroa, apparently not knowing what Porath was referring to, asked "what?" Porath then provided the answer to the question he himself just asked on the topic that he himself just introduced, saying "the ETAL connection with NEA." Figueroa, sounding like he was hearing of this fact for the first time, replied with a question, "with NEA?" and Porath then answered the question by saying "yeah." Faced with this new information provided by Porath, Figueroa made an observation, "if they find out its done." [2] Porath agreed, saying, "its done, that's it. They close the deal they got to pack and go home."

---

[2] That Figueroa made this observation does not mean that he knew of this

3

The nature and content of Porath's statements are fundamentally distinct from those evaluated by this Court in <u>Burden</u> and should lead to a different result. First, it is clearly Porath's purpose to make affirmative factual statements. He is not just providing bait; he is rather providing the bait, the hook and the fish itself. Porath directed the conversation, he brought up the topics, he asked questions and then answered them himself. He also characterized the facts he introduced, saying that certain conduct was "the worst part," or telling Figueroa to "stay away from this shit," referring to requisitions. In this manner, Porath was not merely posing questions or providing a platform for Figueroa to incriminate himself or others; he was making affirmative statements based on information he learned on his own,[3] and going on to draw connections between, and making ethical conclusions from, his information. These factual statements, which were central to the prosecution's case, are precisely the sort of information that must be tested, contextualized, and understood by a jury only after cross examination.

---

information all along, or that he was endorsing it as true. Rather, he is reacting to the facts he learned from Porath.

[3] (1) How does Porath know there is a connection between NEA and ETAL? (2) What does he think this connection is? (3) Was he himself involved in the companies being connected? (4) Why does he say this connection is "the worst part?" (5) Did the FBI tell him to say that, or did he think of it on his own? The list of questions that will never be asked goes on.

4

Second, the purpose of the undercover operation was for Porath to have conversation about past events. Unlike the purpose in <u>Burden</u>, which was to amass evidence of an illegal act – a drug deal or attempted drug deal – in real time, the purpose here was for Porath to speak with Figueroa or whomever else, about past events or conditions. Plainly, Porath was not seeking to capture evidence of an ongoing bribe or kickback or other illegal act, where the words spoken by the participants are *res gestae* of a crime, as was the case in <u>Burden</u>. Indeed, there is no evidence in the record that Porath had such a relationship with Figueroa. Rather, the goal was to capture conversation about events and conditions – the relationship between NEA and ETAL, whether Saglimbeni signed requistions, etc. – that had already occurred. After all, the evidence was clear that Porath had years earlier left the employ of Yaron and was no longer close with Yaron and Buchnik.

Porath's genuine purpose in making these statements on tape is perhaps best illustrated by the one statement that the District Court did exclude. Porath asked Figueroa, "is Mike shitting in his pants, or not yet?" (A-551). The Government argued that this statement should be admitted even without cross examination because it was, after all, a question. However, the Court excluded this statement on Fed. R. Evid. 403 grounds as

5

being unduly prejudicial, as well as Sixth Amendment grounds. Nonetheless, this statement shows that Porath's real intent on the audio tape was not to ask questions, but to do everything in his power to implicate the defendants, even resorting to making accusatory, incendiary statements such as this one, so as to improve his standing as a cooperator. However, Porath was never asked about his real motives or purposes because he never testified.

As a third consideration, it must be remembered that the Government <u>chose</u> to not call Porath as a witness. The record in <u>Burden</u> does not reveal why the cooperator, Saunders, was not called as a witness. However, in the present case, we know that Porath was at all times during the trial available as a witness. The Government chose not to call him. The Government also chose to not tell defense counsel or the court that Porath was in fact available.

In this regard, the Government used this court's opinion in <u>Burden</u> as an element of its trial strategy. Armed with the <u>Burden</u> opinion, the Government made the strategic decision to use the Porath tapes without calling Porath, going so far as to keep from counsel and the court the fact that Porath was actually available to testify. This allowed the Government to play the Porath tapes without subjecting Porath, a deeply problematic

6

cooperator, to the crucible of cross examination as to his motives, purposes, and factual bases for these statements.

The prosecution now argues for what would amount to a license allowing one of its cooperators to make accusatorial, factual statements on audio tape - statements that will never be cross examined yet will be played for a jury as affirmative evidence - merely by claiming that the cooperator was only baiting the target. Regardless of how factual or incriminating these unexamined statements may be in the future, the Government's refrain will be the same: that the Government declarant was only seeking to gain admissions of the target; this claim alone, the Government hopes, will automatically make the declaratory statements of the Government agent admissible. For the reasons raised in Point Two below, the Government should not be permitted to proceed in this fashion.

> 2. Detailed, Factual Accusations Of An Unexamined Government Cooperator Are At the Heart of What the <u>Confrontation Clause Is Meant To Prevent</u>

The Supreme Court has recently observed that:

(t)he abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct, and (b) they involved formalized statements such as affidavits, depositions, prior testimony or confessions.

<u>Williams v. Illinois</u>, 132 S. Ct. 2221, 2242 (2012)

7

Porath's statements have each of these characteristics. First, as noted, it is apparent that Porath's purpose was to make accusatorial factual statements about Yaron, Buchnik and Saglimbeni concerning purportedly illegal activity in which the three men were had been involved. Of Yaron, Porath asked "is Mike shitting in his pants, or not yet." (A-551). Of Saglimbeni, Porath answered Figueroa's questions, indicating that "Santo" had filled out requisitions. (A-1040). Of Buchnik, the head of NEA, he said that "the connection between ETAL and NEA" was the "worst part." In this manner, Porath was not speaking with Figueroa to gain incriminating statements from Figueroa, but to make factual statements about the others. Accordingly, Porath is nothing more than an unsworn, unexamined witness making factual accusations against the appellants.

Second, the wiring up of an FBI cooperating witness, who knows he is creating a tape recording for later use at a criminal trial, is a procedure that is at least as formalized as the creation of an affidavit or deposition. Clearly, Porath and Agent Fortunato knew that they were compiling potential trial evidence in the form of an audio tape. After all, the wiring up of a cooperating witness has no purpose other than to create trial evidence. Just like a forensic laboratory report stating that a suspect substance was cocaine, see Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) or a forensic

report indicating that a defendant's blood-alcohol level was above a certain limit, see Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), FBI Agent Fortunato was commencing a process (the wiring up of an FBI cooperating witness) the only value of which was the creation of actual trial evidence. This case is therefore distinct from those where police respond to a radio call and come upon a man who had been shot and who made statements about the recent shooting, Michigan v. Bryant, 131 S. Ct. 1143 (2011), or where a 911 caller narrates unfolding events, Davis v. Washington, 547 U.S. 813 (2006), or ones involving autopsies, United States v. Feliz, 467 F.3d 227 (2d Cir. 2006). In those cases, the collection of what ends up being trial evidence is done for reasons unrelated to, or at best indirectly related to, a potential trial.

The Crawford v. Washington, 541 U.S. 36 (2004), Hammon, Melendez-Diaz, Bullcoming, line of cases indicates that a defendant's confrontation rights are at their highest when a defendant seeks to challenge the authorities in the creation of what the authorities knew at the time was likely to be trial evidence. That is precisely what we have here.

Counsel for Buchnik suggests that this is an area not directly addressed in the Burden decision due to the specific facts before this Court in that case, specifically that the cooperator there simply did not make

meaningful, affirmative, factual statements.  Just as the Supreme Court has refined its Sixth Amendment jurisprudence, counsel for Buchnik humbly requests that this Court use this matter to do the same.  The Supreme Court has shown in its holdings in <u>Davis v. Washington</u> and <u>Hammon v. Indiana,</u> that the Sixth Amendment analysis is inherently fact intensive, and that what may appear to be a slight factual variation can lead to the opposite result.

 The holding requested by counsel for Buchnik here is neither burdensome on the prosecution nor difficult to apply; it is this: where a Government cooperator makes affirmative, factual, accusatory statements concerning one or more defendants on an audio tape as part of a Government-arranged taping procedure, that cooperator must be cross examined as to those statements as a pre-requisite to their admissibility.  This is especially true where, as here, the cooperator was actually available.

 This proposed holding does not in any way impact this Court's decision in <u>Burden</u>, which still applies to cooperators who do not make affirmative, factual, accusatory statements.  Going forward, prosecutors will be able to follow the proposed holding and can instruct cooperating witnesses not to make affirmative, accusatorial, factual statements.  However, if the cooperating witness does make affirmative, accusatorial, factual statements that the Government wants to play for the jury, the

Government would then have to call the witness to be cross examined on these statements.

The rule cannot be that the prosecution is free to do what it has done here. The use of the Porath statements without affording the cross examination of Porath violated appellant's Sixth Amendment Confrontation rights.

3. Conclusion

For the reasons set forth above, in Appellant's primary brief, and in the briefs submitted by co-counsel, Appellant respectfully requests that this Court reverse his conviction and order a new trial.

Dated:    New York, New York
          November 4, 2013
          (Corrected Reply Brief filed December 20, 2013)

>                              Respectfully submitted,
>
>                              **MARC A. AGNIFILO**
>                              *Attorney for Defendant-*
>                              *Appellant Moshe Buchnik*
>                              767 Third Avenue, 26th Floor
>                              New York, New York 10017
>                              212 750-7800