# 12-2289-cr(L)

12-2940-cr(CON), 12-2972-cr(CON), 12-2976-cr(CON), 12-3078-cr(CON),12-4556-cr(CON), 12-4685-cr(CON)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

### UNITED STATES OF AMERICA

*Appellee*

v.

**MOSHE BUCHNIK, MICHAEL YARON, CAMBRIDGE ENVIRONMENTAL & CONSTRUCTION CORP. DBA NATIONAL ENVIRONMENTAL ASSOCIATES, OXFORD CONSTRUCTION & DEVELOPMENT CORP., SANTO SAGLIMBENI, EMILIO FIGUEROA, AKA TONY,**

*Defendants-Appellants*

---

On Appeal from Judgment of Conviction and Sentence
in the United States District Court for
the Southern District of New York
Crim. No. 1:10-00363-GBD-GWG

---

## FINAL FORM REPLY BRIEF OF APPELLANTS MICHAEL YARON, CAMBRIDGE ENVIRONMENTAL, AND OXFORD CONSTRUCTION

---

Lisa A. Mathewson
Law Offices of Lisa A. Mathewson, LLC
123 South Broad Street, Suite 810
Philadelphia, PA 19109
(215) 399-9592
lam@mathewson-law.com
*Counsel for Michael Yaron, Cambridge
 Environmental, Oxford Construction*

# **TABLE OF CONTENTS**

ARGUMENT IN REPLY ........................................................................1

I.   THE ADMISSION OF PORATH'S RECORDED STATEMENTS
     VIOLATED THE CONFRONTATION CLAUSE, AND THE DISTRICT
     COURT ERRED IN DENYING A NEW TRIAL ON THAT BASIS.  ........1

    A.   David Porath was Available to Testify ................................2

    B.   The Court Cannot Ignore the Effect of Intervening Precedent On
         Burden.  Moreover, Porath's Statements Are Testimonial Even
         Under Burden Alone ...........................................................2

    C.   The Confrontation Clause Violation Was Not Harmless
         Beyond a Reasonable Doubt ................................................6

II.  THE DISTRICT COURT ERRED IN DENYING A NEW TRIAL BASED
     ON THE DUE PROCESS AND COMPULSORY
     PROCESS VIOLATIONS, AND IN DENYING DISCOVERY
     AND A HEARING...............................................................7

    A.   Mr. Yaron Preserved His Brady Claim ................................10

    B.   The Suppressed Material Is The Type To Which The Constitution
         Guarantees Access............................................................11

    C.   Mr. Yaron Made An Adequate Showing Below That The
         Suppressed Evidence Was Favorable And Material ..........................14

        1.   Mr. Yaron Made An Adequate Showing Below That The
             Suppressed Evidence Was Favorable .......................................15

        2.   Mr. Yaron Made An Adequate Showing Below That The
             Suppressed Evidence Was Material...........................................17

    D.   The district court should have examined the suppressed Brady
         material in camera ...............................................................20

    E.   No Showing of Bad Faith is Required ................................20

III. THE STATEMENTS ON THE AUDIO RECORDINGS ARE
     HEARSAY .....................................................................26

i

IV.    THE TRIAL COURT ERRED BY SUBSTITUTING GAIN FOR
       LOSS AT SENTENCING ...................................................................28

CONCLUSION ..........................................................................................30

CERTIFICATE OF VIRUS CHECK .......................................................31

CERTIFICATE OF BAR MEMBERSHIP.................................................32

CERTIFICATION OF WORD COUNT ...................................................33

CERTIFICATE OF IDENTICAL COMPLIANCE IN BRIEFS ............34

CERTIFICATE OF SERVICE ..................................................................35

# TABLE OF AUTHORITIES

Arizona v. Youngblood,
  488 U.S. 51 (1988)..........................................................................22

Black v. United States,
  561 U.S. ___, 130 S. Ct. 2963, 2970 (2010)..................................10, 11

Brady v. Maryland,
  373 U.S. 83 (1963)....................... 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, 22, 23, 24

Crawford v. Washington,
541 U.S. 36 (2004),...........................................................................3

Grunewald v. United States,
353 U.S. 391, 402 (1957)..................................................................5

Kyles v. Whitley,
  514 U.S. 419, 435 (1995)...........................................................12, 18

Leka v. Portuondo,
  257 F.3d 89 (2d Cir. 2001)........................................................11, 12

Michigan v. Bryant,
  113 S. Ct. 1143 (2011).............................................................2, 3, 4

Pennsylvania v. Ritchie,
  480 U.S. 39, 56 (1987 ....................................................................8

Satterwhite v. Texas,
486 U.S. 249, 258-59 (1988) ...........................................................6

United States v. Bagley,
  473 U.S. 667, 681 (1985)................................................................8

United States v. Burden,
  600 F.3d 204 (2d Cir. 2010)......................................................2, 4, 5

United States v. Casamento,
887 F.2d 1141, 1179 (2d Cir. 1989) ..................................................7

United States v. Crisona,
  416 F.2d 107 (2d Cir. 1969)....................................................................9

United States v. Deutsch,
  987 F.2d 878, 886 (2d Cir. 1993) ........................................................29

United States v. Esquillin,
  No. 98-1333, 2000 WL 232162 at *4 (2d Cir. Feb. 18, 2000) ........................ 22-23

United States v. James,
  712 F.3d 79 (2d Cir. 2013).................................................................2, 3

United States v. Mahaffy,
  693 F.3d 113, 131 (2d Cir. 2012)  ................................................passim

United States v. Miranda,
  526 F.2d 1319, 1323 & n.3 (2d Cir. 1975............................................21

United States v. Rivas,
  377 F.3d 195, 199-200 (2d Cir. 2004) ................................................12

United States v. Triumph Cap. Group, Inc.,
  544 F.3d 149, 162 (2d Cir. 2008) ........................................................17

United States v. Valenzuela-Bernal,
  458 U.S. 858, 867 (1982)...................................................................7, 8

United States v. Williams,
  205 F.3d 23, 29 (2d Cir. 2000)............................................................23

United States v. Persico,
  645 F.3d 85, 113 (2d Cir. 2011)..........................................................22

## OTHER AUTHORITIES

U.S.S.G. § 2B1.1, Application Note 3(B) ...............................................29

iv

## **ARGUMENT IN REPLY**

In their opening brief, appellants Michael Yaron, Cambridge Environmental and Oxford Construction ("the Yaron Appellants")[1] explained that the district court erred in denying their motion for a new trial on Confrontation Clause, due process, and compulsory process grounds.  They also explained that the district court erred by admitting hearsay statements for their truth, and by using gain as an alternative measure of loss for sentencing.  The Brief for the United States ("Government Brief," cited as "Gov. Br."), appellee, does not undermine these points.  Reversal is required.

## I.    THE ADMISSION OF PORATH'S RECORDED STATEMENTS VIOLATED THE CONFRONTATION CLAUSE, AND THE DISTRICT COURT ERRED IN DENYING A NEW TRIAL ON THAT BASIS.

(Section II in Government Brief)

The government opens its briefing on the Confrontation Clause with a red herring:  third-party authentication testimony usually suffices to admit audio recordings.  Gov. Br. at 43.  That proposition is uncontroversial as far as it goes – but it does not go far enough to reach this case.  Third-party authentication testimony does not suffice when the statements on the recording are testimonial, or hearsay.  Only by sidestepping the issues at the heart of this case may the

---

[1]    For ease of reference, counsel will refer in this brief to "Mr. Yaron" as the appellant.  The brief is filed on behalf of all three appellants.

government pretend that the general rules of third-party authentication have any bearing.

### A.    David Porath was Available to Testify.

Having foregone briefing on the topic, the government appears to have conceded that David Porath was an "available" witness for Confrontation Clause purposes.  Thus further briefing on this topic is unnecessary.

### B.    The Court Cannot Ignore the Effect of Intervening Precedent On Burden.  Moreover, Porath's Statements Are Testimonial Even Under Burden Alone.

The government invokes another uncontroversial but unilluminating proposition when it contends that this Court's decision in United States v. James, 712 F.3d 79 (2d Cir. 2013), could not have overruled United States v. Burden, 600 F.3d 204 (2d Cir. 2010).  Mr. Yaron would not contend that one panel of this Court overruled another panel. But he does contend that James altered the application of Burden in material ways – and that intervening Supreme Court precedent compelled those changes.  See James, 712 F.3d at 94.

The shifting jurisprudential ground has clearly left the government insecure. It argues as though only the Burden decision exists, and dismisses both James and Michigan v. Bryant, 113 S. Ct. 1143 (2011), in a few sentences.  Gov. Br. at 49-50. Yet however inconvenient the intervening precedent is for the government, it must

2

be acknowledged.  The government ignores <u>Bryant</u> and <u>James</u> at its peril, because it leaves unanswered the arguments that Mr. Yaron raised in his opening brief.

Specifically, Mr. Yaron explained that (1) the test articulated in <u>Bryant</u>, the "primary purpose of creating a record for use at a later criminal trial," is objective, not subjective; (2) <u>Bryant</u> emphasizes the distinction between statements that provide a snapshot of current criminal conduct versus statements that narrate past events; and (3) <u>Bryant</u> urges close attention to the declarant's incentive to fabricate, by restoring hearsay reliability analysis to Confrontation Clause jurisprudence.  Each of these factors supports the argument that Porath's recorded statements were testimonial.  Corrected Page Proof Brief of Yaron Appellants ("Yaron Proof Brief") at 19-22.

The government answers only that <u>Bryant</u>'s test for a "testimonial" statement has no bearing because <u>Bryant</u> did not concern a recording by an informant.  Gov. Br. at 49-50.  That argument ignores the role of precedent in our common law system.  <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), left for future development a comprehensive definition of "testimonial," <u>id.</u> at 68, and courts have labored at that task since.  No court will define "testimonial" differently in different contexts, although a single definition may yield different outcomes on different facts.  Mr. Yaron cites <u>Bryant</u> and <u>James</u> to illuminate the governing definition of "testimonial," and then applies that definition to the facts in the

3

record.  The government simply closes its eyes to developments that postdate Burden, the case that it likes.

In any event, the government is mistaken when it contends that Mr. Yaron cannot prevail under Burden alone.  As Mr. Yaron noted in his opening brief (Yaron Proof Brief at 20), the cooperating witness in Burden made no statements of fact, let alone statements about past events.  Indeed the Burden Court implied doubt that the cooperator's "utterances" – "what are you charging for a 14?," followed by a whistle in response to the answer – were "statements" at all. Burden, 600 F.3d at 224.  The primary purpose of the recording in Burden was to take a snapshot of contemporaneous criminal conduct, and not to make – or even to elicit – statements narrating past events.  The utterances of the declarant in Burden were "bait" (see id. at 225) because they were an invitation to make statements in connection with a criminal act.

This was a critical distinction before Bryant and is even more critical after it. The facts of this case would yield the same outcome as Burden if, for example, Porath had presented a hypothetical "check" to Figueroa in the hope of eliciting Figueroa's offer to sign a "req" in exchange.  That is the type of "bait" for inculpatory statements that Burden addressed:  the audio capture of criminal conduct.  That is not what actually happened.

4

The government makes two unsuccessful attempts to shoehorn this case into Burden's contemporaneous criminal conduct analysis. First, it says that the conspiracy continued through the date of the recordings, because the payments continued. Gov. Br. 52. Although Mr. Yaron strenuously disagrees with this characterization of the scope of the conspiracy, it is irrelevant here. The conversation between Porath and Figueroa addressed history, not the present. The supervising law enforcement agent testified unequivocally that she wanted incriminating admissions about a scheme at the hospital. Gov. Br. at 54 (citing Tr. 1945-46) (3 App. 678-679). There is no sound theory under which Porath's attempts to induce Figueroa to make admissions about past events could be equated with an attempt to elicit contemporaneous criminal conduct under Burden.

Second, the government asserts that Figueroa's recorded statements demonstrate an attempt to conceal the conspiracy that was "an essential part of the ongoing scheme to defraud." Gov. Br. at 53. Again Mr. Yaron contests this characterization of the scope of the conspiracy.[2] And again, the question is irrelevant. Porath's "primary purpose" was to elicit Figueroa's incriminating admissions about past conduct – and failing that, to memorialize with his own words the factual narrative that his government handlers wanted. The supervising

---

[2]    The Supreme Court has long cautioned against inferring that concealment was an object of the conspiracy from the simple fact that concealment occurred, because conspiracies are secret by nature. Grunewald v. United States, 353 U.S. 391, 402 (1957).

law enforcement agent did not say that the government hoped to catch Figueroa attempting a cover-up.  Nor did the government did use the Porath recording that way.

Indeed, even assuming *arguendo* that Figueroa endorsed Porath's statements, the content and credibility of Figueroa's endorsement depends upon the content and credibility of Porath's statements.  Indisputably, Porath supplied assertions of fact, with the "primary purpose of creating a record for use at trial." The government's reliance on Porath's "testimony" is clear.

**C.    The Confrontation Clause Violation Was Not Harmless Beyond a Reasonable Doubt.**

The government does not acknowledge its heavy burden of demonstrating that a Confrontation Clause error is harmless beyond a reasonable doubt.  Gov. Br. at 55-57.  Nor does the government acknowledge the central role that it gave the Porath recordings – the first and last spot in its closing arguments, for example – nor the central importance that the jury assigned them.  See Yaron Proof Brief at 12, 23-24.  Instead it employs the very analysis that the Supreme Court has disapproved:  assessing the sufficiency of the properly-admitted evidence to support a conviction absent the improperly-admitted evidence.  See, e.g., Satterwhite v. Texas, 486 U.S. 249, 258-59 (1988).

The constitutional question is not whether the jury *could have* ignored the recordings and convicted anyway.  The question is whether the jury *may have*

6

considered them.  United States v. Casamento, 887 F.2d 1141, 1179 (2d Cir. 1989).

Only if the government can foreclose that probability – that is, to demonstrate

beyond a reasonable doubt that this jury disregarded the recordings in reaching its

verdict – can it prevail.  Here, of course, that would mean convincing the Court

that the jury disregarded the government's own emphasis on the recordings.  Cf.

Casamento, 887 F.2d at 1880 (noting that prosecutor had not "sought to make a

point" of the improperly-elicited testimony).  And clearly the jury did not; it

reviewed the recordings and/or transcripts twice during deliberations.  The

constitutional error is not harmless beyond a reasonable doubt.

## II.     THE DISTRICT COURT ERRED IN DENYING A NEW TRIAL BASED ON THE DUE PROCESS AND COMPULSORY PROCESS VIOLATIONS, AND IN DENYING DISCOVERY AND A HEARING.

(Section III in Government Brief)

The government chides Mr. Yaron for "commingl[ing]" his due process and

compulsory process claims (Gov. Br. at 66) – ignoring the fact that the Supreme

Court "commingles" the analyses too.  The Supreme Court has long recognized an

overarching constitutional "right to present a defense," which comprises the Due

Process and Compulsory Process Clauses, as well as the Confrontation Clause.

See Yaron Proof Brief at 25-27.  The various aspects of this singular right work

synergistically in Supreme Court precedent, generating what the Supreme Court

"loosely" terms a right of "constitutionally-guaranteed access to evidence."  United

States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).  That is why Valenzuela-Bernal (a compulsory process case) adopted the standards recited in Brady v. Maryland, 373 U.S. 83 (1963) (a due process case); Valenzuela-Bernal, 458 U.S. at 867; and why the Supreme Court's due process case law relies upon compulsory process decisions; e.g., United States v. Bagley, 473 U.S. 667, 681 (1985) (a Brady due process case relying upon Valenzuela-Bernal).[3]

Only with a cramped and hypertechnical reading of an accused person's constitutional rights can the government justify its cramped and hypertechnical reading of its own disclosure obligations.  Neither the Supreme Court nor this Court rigidly delineates a distinction between, for example, a defendant's right to cross-examine a government witness and the right to call a witness in the defense case.  E.g., United States v. Mahaffy, 693 F.3d 113, 131 (2d Cir. 2012) (stating that Brady applies both to material that would be useful for "disciplining witnesses during cross-examination" and to the possibility of calling a witness in the defense case at trial).  Although Brady certainly encompasses impeachment material, it is not limited to it.  Yet both the government and the trial court in this matter fixated upon that illusory distinction, among others.  See, e.g., Tr. of May 17, 2012, 20:13-23:10 (hearing on post-trial motions) (5 App. 1206:13-1209:10).

---

[3]     See also, e.g., Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987).

Pressing a rigid distinction between due process and compulsory process serves the government in several ways.  First, it enables the government to argue for a "bad faith" standard that does not apply when suppressed evidence is material and exculpatory.  <u>See</u> Gov. Br. at III.A.1.  Second, it enables the government to make a specious argument that Mr. Yaron did not preserve his <u>Brady</u> claim.  Gov. Br. at III.B.  Third, it enables the government to attempt to collapse Mr. Yaron's <u>Brady</u> claim into his Confrontation Clause claim, by arguing that Mr. Yaron had no need to impeach Porath because Porath's recorded statements were not "testimonial."  Gov. Br. at III.B.1.  Premised as they are on an unsustainably restrictive reading of the "right to present a defense," each of these arguments – and the governments' others – fails.

At bottom, the government asks this Court to whipsaw Mr. Yaron with the very conundrum that the Supreme Court has expressly attempted to eliminate:  to foreclose scrutiny of the government's nondisclosure because the defendant cannot describe in detail the evidence that the government has kept from him to this day.  <u>See</u> <u>Valenzuela-Bernal</u>, 458 U.S. at 871.  The government asks the Court to immunize its nondisclosure with a hypertechnical parsing of rights that the Supreme Court applies holistically.  It even asks the Court to denigrate the longstanding role of the trial court in enforcing defense access to evidence; <u>see, e.g.</u>, <u>United States v. Crisona</u>, 416 F.2d 107 (2d Cir. 1969); by relieving the trial

9

court of the obligation to examine the contested material *in camera* at least. At bottom that approach would vest with Executive Branch prosecutors unfettered and unreviewable discretion to define and enforce the scope of an accused's right to present a defense. The Court cannot endorse that approach.

### A. Mr. Yaron Preserved His **Brady** Claim.

The government makes a half-hearted attempt to argue that Mr. Yaron did not present his Brady claim to the trial court. Gov. Br. at 76-77. Specifically, the government complains that not until the post-trial hearing did Mr. Yaron's counsel say the name "Brady" or the phrase "due process." Gov. Br. at 77 (citing Tr. of May 17, 2012 at 32-34, 86-87) (5 App. 1218-1220, 1256-1257). At the same time the government admits that in earlier filings defense counsel had demanded the production of Porath's prior statements. Gov. Br. at 77. Defense counsel expressly connected that demand, Porath's unavailability, and the concealment of Porath's extradition status to a Brady theory at the hearing. E.g., Tr. of May 17, 2012, at 14:3-10; 27:1-6; 31:16-25 (5 App. 1200:3-10; 1213:1-6; 1217:16-25). The judge acknowledged the Brady theory by name. Id. at 32:20-24 (5 App. 1218:20-24).

Even had counsel not raised the nondisclosure issue in an earlier written filing, presenting the Brady theory to the district court before it ruled on Mr. Yaron's Rule 33 Motion was sufficient to preserve the issue. Moreover, the

Supreme Court has made clear that trial counsel need not employ clairvoyant precision to preserve a constitutional issue for appeal.  In <u>Black v. United States</u>, for example, the Court noted that the petitioner had preserved the issue decided in a companion case, even though Black's objection had addressed a different aspect of the challenged jury instruction.  Objecting on one ground "secured" Black's right to raise a different challenge to the same jury instruction on appeal.  <u>Black v. United States</u>, 561 U.S. ___, 130 S. Ct. 2963, 2970 (2010).  Plain error review is no more appropriate here than in <u>Black</u>.

### B.  The Suppressed Material Is The Type To Which The Constitution Guarantees Access.

The Government contests the proposition that "<u>Brady</u> requires the government to disclose essential facts that permit the defense to take advantage of favorable evidence, even if the facts are not themselves evidentiary."  <u>See</u> Gov. Br. at 79-80.  The government contends that only "exculpatory and/or impeaching value" makes material subject to <u>Brady</u>, and – again, hypertechnically – distinguishes that question from the question of what degree of disclosure will excuse a <u>Brady</u> violation once a violation is shown.  Gov. Br. at 80.  Because mere changes in Porath's extradition status shed no light on the substantive offenses, the government says, <u>Brady</u> does not apply at all.

But the government misses the point of this Court's decisions in <u>Mahaffy</u> and <u>Leka v. Portuondo</u>, 257 F.3d 89 (2d Cir. 2001); as well as the point to the very

11

sentence that it quotes from Mr. Yaron's opening brief. There are two different types of information in play: one, the "essential facts that permit the defense to take advantage of favorable evidence"; and two, the favorable evidence itself. The government must disclose both. Telling a defendant that a witness has favorable things to say, without telling him facts essential to calling the witness, violates Brady. See Leka, 257 F.3d at 100. Identifying a witness without disclosing that the witness made favorable statements violates Brady. E.g., Mahaffy, 693 F.3d at 131 n.11; United States v. Rivas, 377 F.3d 195, 199-200 (2d Cir. 2004). And disclosing neither the existence of favorable evidence nor information essential to contacting the witness who could provide it – as in this case – certainly violates Brady.

The government's argument reveals the government's fundamental misunderstanding of Brady at another level too: there is no such thing as "excusing" a Brady violation on appeal. If the reviewing court finds that the government suppressed evidence that was favorable and material, it must grant relief. A finding of materiality obviates harmless error review. Kyles v. Whitley, 514 U.S. 419, 435 (1995). The government cannot escape Mahaffy and Leka without drawing this patently specious distinction.

Mr. Yaron's appeal addresses classic Brady material even apart from Porath's extradition status. Prior statements by Porath, for example, or memoranda

memorializing them, were statements of a government cooperator who "testified" via a recording at trial.  <u>See</u> discussion *supra* Section I.B.  As impeachment material Porath's prior statements fall within <u>Brady</u> even on the government's view.[4]  Moreover, one may infer that Porath's consent to extradition was likely part of a cooperation agreement with the government, to attempt to earn leniency at sentencing.  The existence of any such agreement would itself be <u>Brady</u> material, but the government never disclosed one.[5]

Impeachment material is not the only <u>Brady</u> material, of course, and Mr. Yaron's due process claim has merit even if the Court disagrees that Porath's credibility was at issue.  Prior statements by Porath casting doubt on the

---

[4]     The government disagrees that Porath "testified," of course, but recognizes that the credibility of a nontestifying witness may be at issue if his out-of-court statements are offered for their truth.  Gov. Br. at 83.  Mr. Yaron contends that Porath's statements were admitted for their truth (<u>see</u> Section III, below); and that in any event the content and credibility of Porath's statements is also relevant to the content and credibility of any adoption by Figueroa.

[5]     Mr. Porath was sentenced to time served, with three months' home confinement, on a case involving $78,980 in loss to the victim hospital and charges including conspiracy to restrain trade (15 U.S.C. §1), conspiracy to defraud the IRS (18 U.S.C. § 371), and subscribing to a false tax return (26 U.S.C. § 7206(1)).  Judgment Order in <u>United States v. Porath</u>, 1:10-cr-00120-LAP, January 24, 2013 (Doc. 56).  Many filings in the matter were made under seal.  The Judgment Order itself was sealed until the entry of a stipulation between Porath and the government, under which Porath's term of home confinement was lifted.  Stipulation, Feb. 6, 2013 (Doc. 55).  The Stipulation permitted Porath to withdraw money from domestic and foreign accounts for personal use and payments toward his restitution obligations, which included $573,790 owed to the IRS; and thereafter to travel to Israel.  <u>Id.</u>  These facts leave scant room for doubt that Porath had a cooperation agreement.

13

government's theory that the recorded call with Figueroa concerned the so-called "Artech payments" would be "favorable" and "material," whether or not Porath testified.  <u>See</u> Yaron Proof Brief, Section II.B, and *infra* Section II.C.  There is no question but that Mr. Yaron's claims address the suppression of material to which <u>Brady</u> applies.

### C. Mr. Yaron Made An Adequate Showing Below That The Suppressed Evidence Was Favorable And Material.

The government apparently sees no unfairness in its position that Mr. Yaron should lose on his Fifth and Sixth Amendment claims because he cannot describe in detail the materials that it never let him see.  <u>E.g.</u>, Gov. Br. at 73.  The Supreme Court recognizes the unfairness, however, and has alleviated it by relaxing the standards for favorability and materiality for defendants who never received access to the suppressed evidence.  <u>Valenzuela-Bernal</u>, 458 U.S. at 871.  Defendants in Mr. Yaron's position need offer only a "plausible explanation," through legal argument, of the assistance that the evidence would have given the defense.[6]  <u>Id.</u> at 873; <u>see</u> Yaron Proof Brief at 32-35.  The government does not contest that this standard governs – it just blithely ignores it.

---

[6]     This "plausible explanation" standard is similar to the standard that the Supreme Court and this Court employ for requiring *in camera* review of claimed <u>Brady</u> material.  <u>See</u> Yaron Opening Brief at 42-45.  Thus Mr. Yaron incorporates this analysis by reference in Section II.D, below.

14

Unfortunately, the trial court did too.  While acknowledging the

defense's proffer about the assistance the suppressed material would supply

(explained below), the trial court pressed for an unattainable – and unnecessary –

level of detail:

> You have to demonstrate that you would have called him
> as your witness, and **give me a proffer of what he**
> **would have said that would have made the jury**
> **render a different verdict**.  That's the posture you're in
> now.

> To say what?  **Give me specifically the proper noun**
> because that's what you need to give me.  Give me a
> specific proffer of what this witness would have said that
> you say would have made a difference in the jury's
> verdict.

Tr. of May 17, 2012 at 11:4-8 (5 App. 1197:4-8)(emphasis added); 24: 2-13 (5

App. 1210:2-13) (same); accord id. at 10:19-25 (5 App. 1196:19-25).  These

quotations and others demonstrate that the trial court fell into at least two errors:

one, requiring an unreasonable degree of detail in support of the "favorability"

showing; and two, confusing "materiality" with the certainty of a different verdict.

    1.  Mr. Yaron Made An Adequate Showing Below That The Suppressed
        Evidence Was Favorable.

Both Brady and Valenzuela-Bernal require the defense to show that the

suppressed material was "favorable."  Brady, 373 U.S. at 83; Valenzuela-Bernal,

458 U.S. at 867.  "Favorable" is not completely "exculpatory," of course, although

both the government and the trial court employed the higher standard.  See, e.g.,

15

Gov. Br. at 80; Tr. of May 17, 2012, at 10:18-19 (5 App. 1196:18-19) (the court: "[Porath] wasn't going to come in here and exculpate any one of these defendants").

Even the government's brief shows its unduly restrictive interpretation of "favorable." To demonstrate that Porath's prior statements were inculpatory, the government cites other testimony showing that Porath participated in wrongdoing while he worked at NEA – a period that ended in 2001, before the Artech payments (which spanned October 2003-June 2005) that the government claimed were the topic of the recorded conversation. Gov. Br. at 74; see Proof Brief of Appellant Buchnik at 4-7. Apparently the government considers "inculpatory" any statement that is inconsistent with perfect innocence. Porath's prior statements may have been inculpatory – but on other topics than Artech. And statements that imply that he and Figueroa had been discussing other criminal conduct are "favorable" under Brady. A hypothetical statement like "Figueroa and I talked about kickbacks to Saglimbeni for the re-insulation work" might appear inculpatory, but actually casts doubt on the government's interpretation of the recorded call. That is true whether or not Porath's own credibility was at issue, because the interpretation of the recorded call was a cornerstone of the government's case.

16

This is exactly the proffer that the defense made in the trial court, and the district court acknowledged it.  Tr. of May 17, 2012 at 10:19-24 (5 App. 1196:19-24); see also id. at 24:7-27:6 (5 App. 1210:7-1213:6) ; see Declaration of Nathan Lewin ("Lewin Decl."), DDE 150, at ¶ 3 (4 App. 1084-85); DX-290 (4 App. 1067); Memorandum of Law in Support of Motion for a New Trial (Doc. 152), at 10-11 (4 App. 1095-1096); Request for Prior Written and Recorded Statements of David Porath (Doc. 162), at 1-2 (5 App. 1168-1169) (explaining in detail the proffer summarized above).[7]  Material that supports "an alternative version" of a conversation that the government deems incriminating is "favorable" under Brady. United States v. Triumph Cap. Group, Inc., 544 F.3d 149, 162 (2d Cir. 2008). Likewise, material that tends to show that an informant's statements concern a crime other than the one charged is "favorable."  United States v. Jackson, 345 F.3d 59, 72-73 (2d Cir. 2003).  That includes material that is equally consistent with the prosecution and defense theories.  Mahaffy, 693 F.3d at 130.  As explained above, a defendant in Mr. Yaron's position need not proffer evidence to

---

[7]     The government implies that the defense made no such proffer simply because the defense did not reproduce the text of it in its opening brief.  Gov. Br. at 73.  To rebut that unfair implication, Mr. Yaron provides citations to examples of his proffer here.

17

prove favorability, but only a plausible explanation through argument.[8]   That Mr.

Yaron certainly did.

> ### 2.  Mr. Yaron Made An Adequate Showing Below That The Suppressed Evidence Was Material.

As noted above, the trial judge also applied an impossibly strict definition of

materiality, requiring the defense to convince him that the jury would have

acquitted had the defense had access to the suppressed material.  That was error.

Materiality requires only a "reasonable probability" of a different result.  Kyles,

514 U.S. at 434.  Even that standard is less restrictive than it may sound; it means

only that the absence of an alternate explanation "undermines confidence in the

outcome" of the trial.[9]  Id.; see Yaron Proof Brief at 39-41.  As explained in Mr.

Yaron's opening brief, evidence that "might have undercut" the prosecution's

theory, or "quite possibly" have caused the defense to call a witness, or "might

have" affected a witness's testimony on cross-examination meets that standard.

The test is loosely analogous to the concept of altering the "total mix" of

---

[8]    Thus the government's suggestion that Mr. Yaron could have sought an affidavit from Porath after his return from Israel misses the point – and ignores reality.  Porath resumed cooperating after his return, and he had to earn back the government's confidence.  It strains credulity to suggest that he would have given an affidavit in support of a new trial, accusing the government of misconduct, to a defendant whose conviction he wanted credit for at his future sentencing.

[9]    That is why materiality is equivalent to a lack of fundamental fairness. Even if the Court chooses to treat them as two separate elements, the same showing will satisfy both.  Upholding a conviction in which confidence has been undermined would not be fundamentally fair.  See Kyles, 514 U.S. at 434.

information; information is material if it "could have led" to a different result.  See

Yaron Proof Br. at 39-41 (citing, *inter alia*, Mahaffy, 693 F.3d at 131-32).

     The trial court's unshakable confidence in the prosecution's version of the

facts provides an unintended illustration of the danger of a one-sided presentation

of evidence – thereby bolstering the inference of materiality here.  At oral

argument on the post-trial motions the court showed itself immovably convinced

by the government theory:

> The Court:  Well, there's no reason to believe [Porath] would have said that
> [the recorded conversation concerned earlier conduct] . . .
> . . .
>
> Counsel:  You know, the problem with those words is exactly that the
> impact that it's made on Your Honor is the impact that it made
> on the jury.
>
> The Court:  Right.
>
> Counsel:  And consequently, if somebody who was actually a party to that
> conversation had explained what was said, it would not have
> had that impact.
>
> The Court:  That's what I'm saying.  What do you say that Mr. Porath
> would have explained that was different than the obvious, as
> they say?

Tr. of May 17, 2012 at 33:17-35:5 (5 App. 1219:17-1221:5).  But "the obvious"

was "obvious" to the trial judge *only because the defense was foreclosed from*

*proving an alternate version*.  The trial court's trenchant skepticism about the

value of the suppressed evidence actually illustrates the devastating effect of its

absence.  The trial court, no less than the jury, heard a one-sided presentation that

perverted the adversary process.  The court then treated that version as

presumptively correct:

> The Court:  what would make you think that there's any reasonable argument you could make to me that [the defense theory] is what Porath is going to say?
>
> Counsel:   . . . it's not our burden to tell your Honor . . .
>
> The Court:  Now it is, because the jury's already convicted your client; so it is a burden. . . . it's your burden to tell me that what (sic) the key witness would have said that would have changed the verdict.

Tr. of May 17, 2012 at 37:2-13 (5 App. 1223:2-13).  The trial court erred in

holding the defense to that impossible standard of materiality.  On the correct

standard, the possibility of developing evidence that the recorded call concerned

different conduct than the government argued is plainly material.  See Jackson, 345

F.3d at 72-73.

### D.    The district court should have examined the suppressed **Brady** material *in camera*.

The government barely responds to this argument, except to reiterate two

points that it makes elsewhere:  one, that the defense raised its Brady claim

belatedly if at all; and two, that the defense's showing of favorability and

materiality was so inadequate as to obviate the *in camera* review that this Court

requires.  Gov. Br. at 85.  Because Mr. Yaron addresses both points elsewhere in this Reply Brief (Sections II.A and II.C), he will not reiterate them here.

### E.    No Showing of Bad Faith is Required

Nowhere is the government's chary interpretation of its own professional obligations more evident than in its discussion of bad faith.  Setting aside for a moment the legal issue of why Mr. Yaron did not need to show bad faith below, the government's parsimonious description of its duty of candor to the tribunal should give this Court pause.  The government says that it had no duty to correct its prior representation that Porath was in Israel "awaiting extradition" because that phrase – first employed while the government believed that Porath was still fighting extradition – remained literally true even after Porath was arrested in Israel after nearly a year at large, consented to extradition in court, entered U.S. custody and was being prepared for prompt transport.  See Gov. Br. at 69.  And the government denies any obligation to update the record despite having previously produced to the defense documents showing that Porath was fighting extradition – and despite knowing full well that defense counsel were laboring under the impression that Porath was unavailable.  See, e.g., Government's Memorandum in Opposition to Defendants' Motion for a New Trial (DDE 156), at 4-5 (5 App. 1136-37) ; DX-290 (affidavit) (4 App. 1067-68); Tr. of Jan. 5, 2012, at 28 (1 App.

21

97) (defense counsel: "they don't have Porath"); Tr. of Jan. 26, 2012, at 1713

(defense counsel: "Porath is gone") (2 App. 555).

The defense of "literal truth" is hardly consistent with the Department of

Justice's obligations to the court and to the ideal of justice.  The facile

embellishment "they didn't ask" is no better.  Gov. Br. at 69; see United States v.

Miranda, 526 F.2d 1319, 1323 & n.3 (2d Cir. 1975) ("The Assistant's

representation to the court and defense counsel that all the tapes and recordings in

the Government's possession had been turned over, while it was literally true, can

scarcely be considered other than misleading.  It left the impression that there had

been no tape recording of the March 25 conversation.  We strongly disapprove of

such conduct, which is painfully close to sharp practice and unbecoming for a

prosecutor representing the Government of the United States.").

In any event, this sequence of events is only one of several that contributed

to the *prima facie* showing, at least, of bad faith below.  That showing warranted a

hearing even if the Court concludes that bad faith is required.  See Yaron Proof

Brief at 50-51.

But bad faith is not required when the defendant has made an adequate

showing that the suppressed evidence was favorable and material.  The

government's implicit dismissal of the foundational differences between Brady

22

(which <u>Valenzuela-Bernal</u> imported into the Compulsory Process Clause context) and <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), cannot stand.

First, Mr. Yaron must rebut the government's statement that he has "concede[d]" that this Court has twice "held" that a compulsory process claim requires bad faith. Gov. Br. at 70. As the government highlights when convenient, one panel of this Court cannot overrule another panel. Thus the fact that later decisions of this Court dispense with the bad faith requirement[10] shows that the Court never so "held." Indeed one of the two opinions upon which the government relies is a pre-2007 summary order, which has no precedential value under Local App. Rule 32.1.1(a).[11] <u>See</u> Gov. Br. at 70 (citing the "holding" in <u>United States v. Esquillin</u>, No. 98-1333, 2000 WL 232162 at *4 (2d Cir. Feb. 18, 2000)). Nor is the bad faith requirement articulated in <u>United States v. Williams</u>, 205 F.3d 23, 29 (2d Cir. 2000), properly considered a "holding." The <u>Williams</u> Court held that the defendant had not been deprived of material or exculpatory evidence; thus it did not need to reach the bad faith question. <u>Id.</u> at 30. And <u>Williams</u> erred when it did so. Yaron Proof Brief at 49-50.

---

[10] <u>See, e.g.</u>, <u>United States v. Persico</u>, 645 F.3d 85, 113 (2d Cir. 2011).

[11] The government's citation to <u>Esquillin</u> as authoritative violates Local App. Rule 32.1.1(b)(2). Mr. Yaron also cited the summary order but contended that it is <u>not</u> authoritative. Yaron Proof Brief at 49.

The government cannot seriously contest that Valenzuela-Bernal adopted the Brady standard for compulsory process claims when the suppressed evidence is favorable and material.  See Valenzuela-Bernal at 867-68, 873; Yaron Proof Brief at 47-49.  Its argument depends upon selective (mis)quotations from Youngblood. The government achieves its end only by omitting the outcome-determinative clause of the sentence that it quotes from Youngblood:

> [A]s the Supreme Court observed in *Youngblood*, "the Due Process Clause requires a different result" when "the State fails to disclose to the defendant material exculpatory evidence [as in *Brady*]" than when the claim is "the failure of the State to preserve evidentiary material."

Gov. Br. at 71 (citing Youngblood, 488 U.S. at 57).

But here is how the quoted sentence from Youngblood actually ends: ". . . the Due Process Clause requires a different result [from *Brady*] when we deal with the failure of the State to preserve evidentiary material **of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant**."  Youngblood, 488 U.S. at 57 (emphasis added).  That is, the rest of the sentence shows that the salient distinction is between – on the one hand  – "favorable and material" evidence (governed by Brady and not subject to a bad faith showing); and – on the other – merely "potentially useful" evidence, which is subject to a showing of bad faith.  See Yaron Proof Brief at 46-47, 49.  One might say that despite this material omission

24

the government's quotation from Youngblood is "literally true," to the same extent that its statement about Porath's status was "literally true" – but "literally true" is not the standard to which the Department of Justice should aspire.

Clarifying this distinction between Brady and Youngblood then clarifies the statements from Valenzuela-Bernal and Buie upon which the government relies. Valenzuela-Bernal does say that "the responsibility of the Executive Branch faithfully to [enforce the immigration laws] justifies the prompt deportation of illegal-alien witnesses upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." Valenzuela-Bernal, 458 U.S. at 872; see Yaron Proof Brief at 48-49. The structure of this sentence is as follows: if the evidence is not "favorable," and the Executive acted in "good faith," then there is no violation. In other words, absent a showing of favorability (and materiality), the defendant must show bad faith – as Youngblood later held. The sentence does not say "if the evidence is favorable and material, *and* the Executive has acted in good faith, then there is no violation," which is how the government would like to read it.[12] This Court's decision in Buie v. Sullivan was perfectly consistent with this interpretation of Valenzuela-Bernal, because the district court in Buie had concluded that the defendant failed to show

---

[12]    In simplified form, the sentence is "if 'A' [good faith] and not 'B' [favorability], then not 'C' [a constitutional violation]." As a matter of logic the sentence does not dictate the result that the government wants, which is "if 'A' [good faith] and 'B' [favorability], then not 'C' [a constitutional violation]."

materiality.  Buie v. Sullivan, 923 F.2d 10 (2d Cir. 1990).  Bad faith is required

only when the suppressed evidence is of uncertain value.

Of course if this Court finds that Mr. Yaron has not made an adequate

showing of favorability and materiality, and denies him an opportunity to develop

a record, then it will apply the bad faith standard that Youngblood articulates.   In

that case the Court should consider another line from Youngblood:

> requiring a defendant to show bad faith on the part of the
> police . . . confines [relief] to cases where the interests of
> justice most clearly require it, *i.e.*, those cases in which
> the police themselves by their conduct indicate that the
> evidence could form a basis for exonerating the
> defendant.

Youngblood, 488 U.S. at 58.  This is just that sort of case.  The government's

failure to update the trial court and counsel on Porath's change of status – which

would have been a simple matter of saying it on the record before jury selection

began – and its dogged resistance to letting even the *judge* examine Porath's prior

statements, cannot but raise the inference that the government was worried about

the can of worms that a disclosure would open.


## III.   THE STATEMENTS ON THE AUDIO RECORDINGS ARE HEARSAY.

(Section II.C in Government Brief)

The government maintains that the recorded statements of Porath and

Figueroa are admissible non-hearsay.  As to Porath, the government claims that it

26

offered his statements only as context for Figueroa's statements, not for the truth of the matters asserted. Gov. Br. at 61-62. As to Figueroa, the government claims that his statements furthered the conspiracy because they "helped 'maintain trust and cohesiveness' among the conspirators." Id. at 57-58. The government is wrong on both counts.

The government does not even attempt to defend the admission of Porath's statements under the co-conspirator exception to the hearsay rule, and acknowledges that the district court admitted the statements without explanation. Gov. Br. at 61. That leaves the government in the awkward position of arguing that the statements were not offered for their truth. Awkward, that is, because "for their truth" is exactly how the prosecutor actually used Porath's statements at trial. See Yaron Proof Brief at 23-24, 52-53. The "context" argument is a *post hoc* rationalization, which the government never urged below. Permitting the government to use Porath's statements for the truth of the matters asserted was reversible error.[13]

---

[13]    The government attributes to Mr. Yaron the argument that the district court plainly erred by failing to give a limiting instruction about "context." Gov. Br. at 62-64. That is a straw person of the government's design. Mr. Yaron does not complain that the trial court failed to instruct the jury about the limitation on the use of the statements – he complains that the trial court admitted the statements without limitation.

The government fares no better with Figueroa's statements.  At the outset, the government misconstrues Yaron's argument.  Of course "there is no requirement that the person to whom the statement is made . . . be a member" of the conspiracy.  Gov. Br. at 58 (quoting United States v. Beech-Nut, 871 F.3d 1181, 1199 (2d Cir. 1989)).  But Porath's years-past withdrawal from the conspiracy forecloses the possibility that Figueroa's statements to him were designed to "prompt [Porath] . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity."  United States v. Desena, 260 F.3d 150, 158 (2d Cir. 2001).  Clearly, they were not:  they concerned history only, and exhorted Porath to no action.  Beech-Nut actually supports Mr. Yaron's position; it explains that a " 'merely narrative' description by one coconspirator [of] the acts of another" does not meet the "in furtherance" test.  Beech-Nut, 871 F.3d at 1199.  A mere narrative is the most that Figueroa offered to Porath.  It is, indeed, exactly what Porath wanted.  The statements of each were inadmissible hearsay.

## IV.   THE TRIAL COURT ERRED BY SUBSTITUTING GAIN FOR LOSS AT SENTENCING

(Section IV in Government Brief)

The government has not addressed the shortcomings in the trial court's Guidelines calculation, for several reasons.

28

First, the government's attempt to identify evidence to support the finding that "there was a loss" has led it to, apparently unwittingly, demonstrate that reversal is required. The government does not seem to realize that identifying an actual loss conclusively proves the impropriety of substituting gain – thus it argues, for example, that the record demonstrated a $90,000 loss in connection with one kickback. Gov. Br. at 87 (citing GX 321). The jump from a proven $90,000 loss to the district court's $2.4 million loss figure doubled the offense-level enhancement, from 8 to 16. On the government's theory, Mr. Yaron should have been sentenced at a total offense level of 21.

Second, the three facts that the district court cited at the sentencing hearing do not in fact demonstrate a loss. See Gov. Br. at 87-88. At most, two of the three demonstrate a mere opportunity for a loss. Specifically, the court noted that the recipient of the kickbacks had an incentive to choose his co-defendants' bids over hypothetical lower bids; and that submitting a rigged bid would foreclose the opportunity for a competitor to submit a lower one.[14] Tr. of July 10, 2012 at 68-69 (5 App. 1336-1337). In both of those cases, the possibility of a lower bid was merely speculative. Sentencing on mere speculation is impermissible. E.g., United States v. Deutsch, 987 F.2d 878, 886 (2d Cir. 1993).

---

[14]    The other example that the district court gave, of opening a sealed bid, would likely yield a reduction in the bid price. Id.

Finally, the government baldly states that the "plain text" of Application Note 3(B) to U.S.S.G. § 2B1.1 forecloses Mr.Yaron's argument about the objective impossibility of determining loss. Gov. Br. at 89. That "analysis" is mysterious. The plain text of the note says that substituting gain is permissible only if loss "cannot reasonably be determined." "Reasonably" is well understood in the law as an objective standard. The government's failure to prove loss does not make loss undeterminable; it makes it unproven. Substituting gain was impermissible.

## CONCLUSION

For all the foregoing reasons and those stated in their opening brief, the Yaron Appellants are entitled to a new trial on Counts 1 and 2 of the Superseding Indictment. In the alternative, the Court should remand for discovery and a hearing. At a minimum, this Court should vacate the judgment and remand for resentencing on the counts of conviction.

Respectfully submitted,

/s/_____

Lisa A. Mathewson
The Law Offices of Lisa A. Mathewson, LLC
123 South Broad Street, Suite 810
Philadelphia, PA 19109
215-399-9592
lam@mathewson-law.com

Counsel for Appellants Michael Yaron,
Cambridge Environmental, and Oxford
Construction

Dated: November 4, 2013

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies that she is admitted to the Bar of this Court and is in good standing.

*/s/ Lisa A. Mathewson*
Lisa A. Mathewson

## CERTIFICATION OF WORD COUNT

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that this Brief is prepared in 14-point proportionately spaced format. This brief complies with the type-volume limitations of Rule 32(a)(7)(B), because according to the word count feature of Microsoft Word for Windows, the number of words in this brief, inclusive of text and footnotes, is 7000.

*/s/ Lisa A. Mathewson*
*Lisa A. Mathewson*

## CERTIFICATE OF IDENTICAL COMPLIANCE IN BRIEFS

The undersigned certifies that the text of the E-Brief and hard copies of this

Corrected Proof Brief are identical.


*/s/ Lisa A. Mathewson*
Lisa A. Mathewson

## CERTIFICATE OF VIRUS CHECK

The undersigned certifies that a virus check was performed on the foregoing

prior to electronic transmission using the MacAfee Security Center system.


/s/ Lisa A. Mathewson
Lisa A. Mathewson

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013 I caused a copy of the foregoing

Corrected Proof Brief to be served upon the following via electronic filing:

John James Powers, III
Nickolai Gilford Levin
Finnuala K. Tessier
United States Department of Justice
Appellate Section, Antitrust Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
*Counsel to Appellee U.S. Department of Justice*

Marc Agnifilo
Brafman & Associates, PC
767 Third Avenue, 26th Floor
New York, NY 10017
*Counsel to Appellant Moshe Buchnik* (No.12-2889)

Neal Sanford Comer
Neal S. Comer, Attorney at Law
81 Main Street, Suite 205
White Plains, NY 10601
*Counsel to Appellants Santo Saglimbeni and Artech Corp.* (No.12-3078)

Aidan P. O'Connor, Esq.
Pashman Stein, PC
21 Main Street
Hackensack, NJ 07601
*Counsel for Appellant Emilio Figueroa* (No.12-4685)

*/s/ Lisa A. Mathewson*
Lisa A. Mathewson

36